In the Matter of the BOARD OF ETHICS OF THE CITY OF NEW YORK et al., Respondents, *v.* TEMPORARY STATE COMMISSION TO MAKE A STUDY OF THE GOVERNMENTAL OPERATION OF THE CITY OF NEW YORK et al., Appellants.

First Department, May 31, 1973.

*Brenda Soloff* of counsel (*Samuel A. Hirshowitz* with her on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellants.

*R. Harcourt Dodds* of counsel (*Stanley Buchsbaum* and *Frances Loren* with him on the brief; *Norman Redlich, Corporation Counsel*), for respondents.

CAPOZZOLI, J. The Temporary State Commission to Make a Study of the Governmental Operation of the City of New York (hereinafter referred to as the Commission) was established, pursuant to a special act of the Legislature of the State of New York (L. 1971, ch. 413, as amd. by L. 1972, ch. 280, § 6).

Amongst other things the Commission was given the power to investigate and hold private and public hearings on management, structure, organization and the fiscal and governing practices of the City of New York and its agencies. In this connection, subdivision d of section 5 of chapter 413 of the Laws of 1971 gives the Commission the power to: " administer oaths or affirmations, subpoena witnesses, compel their attendance, examine them under oath or affirmation and require the production of any books, records, documents or other evidence it may deem relevant or material to an investigation ".

Section 6 of chapter 413 further provides: " The commission may request and shall receive from any unit of city government and any department, board, bureau, commission, office, agency or other instrumentality thereof, or from any agency of the state, such facilities, assistance and data as it deems necessary or desirable for the proper execution of its powers and duties."

In the course of its work the Commission learned that the office of the Comptroller of the City of New York had reported that, as of August 20, 1971, the Housing and Development Administration (HDA) had made loans of $74,910,000 in connection with its municipal loan program for rehabilitation of substandard housing. Of that figure, $25,435,000 was alleged to be in default. With regard to this the Commission also learned of certain conflict of interest charges levelled against the then Administrator of HDA, Albert A. Walsh, by a member of the City Council of the City of New York, which charges were given extensive publicity in the newspapers, radio and television. In essence, it was charged that Administrator Walsh was a member of a law firm which respresented certain clients having dealings with HDA and that, because of this, these clients continued to receive loans, although they were behind in their payments of old loans.

The Commission, quite naturally, became concerned with possible maladministration of this huge program, including the question of whether favoritism had been shown to certain loan applicants who were represented by the old law firm of which Administrator Walsh had been a member, despite their failure to have met their earlier obligations to HDA. Accordingly, it entered into an investigation of the workings of HDA and, on May 26, 1972, served a subpoena duces tecum on the City's Board of Ethics (hereinafter referred to as the Board) calling for the production of records which pertained to the Board's recently concluded (April, 1972) investigation into alleged conflict of interest charges concerning Administrator Walsh. Amongst these records of the Board the Commission hoped to find the testimony of Administrator Walsh and written communications from him to his former law firm.

The Board did not comply with the subpoena and moved, under CPLR 2304, to quash the subpoena, claiming exemption by reason of the fact that the papers and information received by the Board, in the carrying out of its duties, are privileged from disclosure in the public interest.

The Board of Ethics was established by the City of New York (Administrative Code of City of New York, § 1106–2.0) with power to " render advisory opinions to officers and employees, with respect to section 1106–1.0 of the administrative code of the city of New York. Such advisory opinions shall be rendered pursuant to written request by the officer or employee concerned. The board shall publish its advisory opinions with such deletions

as may be necessary to prevent disclosure of the identity of the officer or employee involved.'' (§ 1106–2.0, subd. b).

Administrator Walsh addressed a letter to the Board of Ethics requesting an opinion from it as to whether, in its opinion, he was guilty of any conflict of interest or any wrongdoing and he made his request public. In his letter to the Board, the Administrator wrote as follows: '' On several recent occasions Councilman Robert Postel has publicly charged that I am guilty of ' conflict of interest ' and/or ' wrongdoing ' in that a client of my former law firm is a major participant in the Municipal Loan Rehabilitation Program which is administered by the Department of Development of HDA ''.

After an investigation by the Board, which included the taking of testimony, examination of records, etc., it concluded as follows: '' We are of the opinion that the Administrator does not now have, nor did he at any time during his service as Administrator have, any financial or other private interest in the legal fees paid to his former law firm by the two realtors in connection with any of the matters referred to by the Councilman.''

The Board argues that the data received by it was received with the understanding that it would be used solely for the purpose of rendering an advisory opinion, as requested by Administrator Walsh, and that it has not been authorized by either Administrator Walsh or the law firm to make it public. Further, it maintains that, if it were compelled to disclose this data by virtue of the subpoena duces tecum served on it, it would constitute a breach of the pledge of confidentiality and would impair the effectiveness of the work which the Board is called upon to perform. The Board further argues that the information and the papers received by it are privileged from disclosure in the public interest.

It is to be noted that the Board does not rely on any particular statute which would make the data statutorily privileged, but, rather, relies on what is known as '' a public interest privilege * * * available to certain public officers in the executive branch in certain contexts. * * * What is clear is that the qualification, if any, of the privilege does not turn upon the private purpose with which the informant made the confidential communication, but on whether the public interest is better served by disclosure or by keeping the seal of confidence.'' (*Matter of Langert* v. *Tenney*, 5 A D 2d 586, 588).

Applying the test laid down by *Langert* v. *Tenney* (*supra*), we are not concerned with the private purpose for which Administrator Walsh may have made any confidential communi-

cation, but, rather, with whether the public interest will be better served by disclosure. As was said by the court in the last-cited case (p. 588): "The concern here is with the privilege of the public officer, the recipient of the communication, rather than with the privilege of the maker of the communication."

Therefore, the question is squarely presented. Is the file of the Board of Ethics protected on the theory of a public interest confidential communication privilege as against the direct authority and mandate of the Legislature of the State of New York which has ordered all city departments to co-operate with the State Commission and to make available to it "such facilties, assistance and data as it deems necessary or desirable for the proper execution of its powers and duties"? (L. 1971, ch. 413, § 6.)

Conceding that the law confers a common-law public interest privilege upon the Board, same may be displaced by a superior public interest. Therefore, each conflict must be resolved on an individual basis. (*Matter of Langert* v. *Tenney, supra*; *People* v. *Keating*, 286 App. Div. 150; *Matter of Department of Investigation* v. *Temporary State Comm.*, 40 A D 2d 628.)

It is interesting to note that the very same court which decided this case at Special Term was called upon to decide the case of *Matter of Department of Investigation* v. *Temporary State Comm.* (*supra*), which presented a similar conflict of interest issue. In the last-cited case Special Term, in an unreported decision said: "The law is well settled that the state may oversee the workings of its instrumentalities of which the City of New York is one. The establishment and purpose of respondent are in all respects lawful, and in fact, as a creature of the Legislature, are not subject to court review (Bacon v. Miller, 247 N. Y. 311). The powers to effectuate respondent's purpose include subpoena. While petitioner may successfully resist a subpoena issued by a private litigant (Matter of Langert v. Tenney, 5 A. D. 2d 586), it is unable to do so where a duly constituted public body is conducting an authorized investigation (Herlands v. Surpless, 258 App. Div. 275, aff'd 282 N. Y. 647)."

No more eloquent statement could be made to express the existing law as it applies here and we adopt it categorically.

I have carefully considered the dissenting opinion and regret to make the observation that it is replete with irrelevancies which are of no help to the determination of the issue presented by the case at bar. Whether or not the Commission has the power to compel obedience to its subpoenas must be found in the intent of the Legislature, as disclosed by the language which created

the Commission and which spelled out its powers. Therefore, I am not surprised that the dissent candidly says: "we have no real dispute with the analysis and conclusion in the majority opinion". But, what is disturbing, is the statement in the dissent that the majority "reaches a conclusion that is not in the public interest".

Considering the events which preceded the action of the Commission in serving its subpoena upon the Board, this last cited statement in the dissent is, to say the least, amazing. It is obvious that the Commission came into the picture as a result of the report of the Comptroller of the City of New York and also because of the publicized conflict of interest charges levelled against the Administrator of the HDA. Therefore, I would suggest that it was perfectly reasonable for the Commission to do what it did and it would have been subject to serious criticism had it failed to act for, surely, the public was interested in knowing the truth of these charges.

The dissent cites extrajudicial personal writings of one who is counsel to the Board of Ethics, the petitioner herein. No matter how erudite the gentleman may be, his views certainly give no authority to the Board to disobey the clear command of the Legislature of this State. Its only claim for its position is that there is need for secrecy in this case. Aside from the law, and addressing myself to the factual situation in the case at bar, there is no need for secrecy. The only secrecy enjoined on the Board is to make "such deletions as may be necessary to prevent disclosure of the identity of the officer or employee involved" (supra). In the case at bar the Board publicly announced that the gentleman involved was Administrator Walsh, with the latter's obvious approval. Hence, there is no further need for secrecy. No authority is given to the Board to secrete anything else except the identity.

It seems clear that it was, and is, the duty of the Board to co-operate willingly in carrying out the mandate of the Legislature instead of raising highly technical objections which have the effect of obstructing the work of the Commission.

Therefore, there being no valid reason why the Board of Ethics should not comply with the subpoena served upon it, the order and judgment appealed from should be reversed on the law and in the exercise of discretion, without costs. Compliance with the subpoena should be directed.

KUPFERMAN, J. (dissenting). We dissent and would affirm the granting of petitioner's application to quash the subpoena duces tecum. We have no real dispute with the analysis and

conclusion in the majority opinion, but by dealing in absolutes and ignoring the reality of the specific situation, it reaches a conclusion that is not in the public interest.

We have here a demand by the Temporary State Commission to Make a Study of the Governmental Operation of the City of New York (State Study Commission, also known as Scott Commission) for the production of records of the Board of Ethics of the City of New York relating to an investigation by the Board into conflict of interest charges concerning the former Administrator of the New York City Housing and Development Administration. The Board of Ethics of the City of New York, created by local law, with the duty of rendering advisory opinions to city officers and employees interpreting the City Code of Ethics (Administrative Code, § 1106–1.0 et seq.) was a great advance in dealing with ethical problems and conflict of interest questions in municipal government. (See "Mood of the People" by S. Stanley Kreutzer [counsel to the Board of Ethics, who helped draft New York City's Code of Ethics], National Civic Review, Vol. L, No. 5, May 1961, p. 248.)

The Board of Ethics operates under a regime of confidentiality in order to preserve its "confessional" acceptability. Many opinions have been rendered by the Board, and it is under a statutory duty to prevent disclosure of the identity of city employees when it publishes an opinion. It may well be argued that implicit in this requirement is a corollary that preliminary data submitted for the purpose of decision should also be kept confidential.

In this framework we find that the demanding party, the State Study Commission, has already filed its last report, *New York Times,* Thursday, April 19, 1973, page 62, and it is no longer funded. It was created by a special act of the New York State Legislature (L. 1971, ch. 413) and is not being renewed. Regardless of whether it can be concluded that the State Study Commission indeed performed any function (interview with Chairman Stuart N. Scott, *New York Times,* Sunday, April 22, 1973, section 1, p. 22, cols. 4–5), it is now *functus officio.*

The investigation which led to the subpoena here involved was initiated by Maurice Nadjari, then the State Study Commission's general counsel. However, he has left to become a Special Deputy Attorney-General by appointment of Attorney-General Louis J. Lefkowitz, under executive orders of Governor Nelson A. Rockefeller, pursuant to section 63 of the Executive Law, and he superseded the District Attorneys in New York City in matters relating to corruption in the administration of criminal

justice. (See " Superseding the District Attorneys in New York City — The Constitutionality and Legality of Executive Order No. 55 " by Robert M. Pitler, XLI Fordham L. Rev. 517 [March, 1973].)

The situation here is not unlike that considered by the United States Supreme Court with respect to the contention that a newsman has a First Amendment right to refuse to testify when called before a Grand Jury. (*Branzburg* v. *Hayes,* 408 U. S. 665 [1972].) As Mr. Justice POWELL suggested in his concurring opinion (p. 709), the State authorities are not free to annex the news media as an investigative arm of the government, and a proper balance should be struck between freedom of the press and the obligations of citizens. In the same way here, substituting the Board of Ethics for the news media, a proper balance leads to the conclusion that the subpoena should be quashed.

In discussing the *Branzburg* case, an editorial in the Journal of the American Judicature Society (vol. 56, No. 6 [Jan. 1973], p. 225) used the phrase " Quis Custodiet Custodes? " (" Who Will Watch the Watchdog? "). To allow a dead horse to kick its heels, as against preserving inviolate a valid and forward advance in the system of raising ethical standards for public employees, has no justification.

STEVENS, P. J., and MARKEWICH, J., concur with CAPOZZOLI, J.; KUPFERMAN, J., dissents in an opinion in which MURPHY, J., concurs.

Order and judgment (one paper), Supreme Court, New York County, entered on July 31, 1972, reversed, on the law and in the exercise of discretion, without costs and without disbursements, the application denied and the petitioners-respondents directed to comply with the subpoena duces tecum.