128 Ill. App.3d 798 (1984)
471 N.E.2d 601
In re PETITION OF ILLINOIS JUDICIAL INQUIRY BOARD (Illinois Judicial Inquiry Board, Petitioner-Appellant,
v.
Chicago Bar Association et al., Respondents-Appellees).
No. 84-266.
Illinois Appellate Court  First District (1st Division).
Opinion filed November 13, 1984.
Samuel K. Skinner and Jeffrey R. Tone, both of Sidley & Austin, of Chicago, for appellant.
*799 John F. McCarthy, of Chicago (Richard William Austin, James W. Collins, Michael A. Pope, Gordon B. Nash, Jr., Kevin M. Forde, and Roseann Oliver, of counsel), for appellee.
Judgment affirmed.
JUSTICE McGLOON delivered the opinion of the court:
The Illinois Judicial Inquiry Board (Board) appeals the dismissal of its petition to enforce a subpoena ad testificandum and duces tecum issued to Thomas Z. Hayward, Jr., former president, Chicago Bar Association (CBA), for records relating to the CBA's evaluation of the associate judges of the circuit court of Cook County. On appeal the Board argues: (1) the trial court erred in finding the CBA has a qualified privilege in the subpoenaed information which supersedes the Board's subpoena; (2) the trial court erred in relying on information outside the record; and (3) the trial court erred in not holding an evidentiary hearing.
We affirm.
On May 23, 1983, the CBA issued a report to the chief judge of the circuit court of Cook County evaluating the 138 associate judges who were being considered for retention by the circuit court judges. On June 1, 1983, an article appeared in the Chicago Tribune indicating the report had recommended nine associate judges not be retained. The article named three judges who allegedly received not recommended ratings because "their integrity was questioned."
The Board's subpoena sought "all documents in whatever form * * * which `either directly or indirectly' reflect actual or potential violations of the Standards of Judicial Conduct * * *." The subpoena also sought all records underlying the recommendations "for non-retention of certain associate judges."
In response to the Board's petition for enforcement of the subpoena, the CBA filed a motion to dismiss the petition and a supporting affidavit. The affidavit, executed by Thomas Z. Hayward, Jr., former president of the CBA, states the CBA was established in 1874 and has made recommendations concerning the qualifications of judicial candidates and of judges seeking retention "throughout its history." The recommendations are made by the CBA's Committee on Evaluation of Candidates (CEC). The CEC undertakes investigations and hearings regarding the qualifications of candidates. The rules of the CEC specify that all information obtained by the CEC "shall be kept confidential and shall not be disclosed to any person including the candidate." Every member of the CEC signs an oath of confidentiality not to disclose "any information received from any person or source during the course of the investigation and hearing." People *800 who supply information to the CEC are assured that the information is confidential. The CEC relies heavily on the right and ability of members of the CBA and other persons to voluntarily and in confidence relate their experiences and opinions of the professional qualifications and capabilities of a candidate. The affiant concluded that the subpoena would "destroy the confidentiality of this information," impair the effectiveness of the evaluation process, and "may lead to its abandonment." The Board did not file a counteraffidavit.
First, the Board contends that the trial court erred in finding the CBA has a qualified privilege in the subpoenaed information which supersedes the Board's subpoena.
 1 In his treatise on evidence, Professor Wigmore has established a four-part test for the creation of a privilege against disclosure of communication. 8 Wigmore, Evidence sec. 2285 (McNaughton rev. ed. 1961):
"(1) The communications must originate in a confidence that they will not be disclosed.
(2) This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
(3) The relation must be one which in the opinion of the community ought to be sedulously fostered.

(4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation."
The unrefuted affidavit submitted by Thomas Hayward clearly satisfies the first two criteria. The affidavit specifies that the CBA pledges confidentiality to each participant in its judicial evaluation process, that the CBA relies heavily on the ability of the participants to advance their opinions and experiences in confidence, and that the CBA may abandon its evaluation if that confidence is eroded. In addressing the third and fourth criteria, we must consider the efficacy of the CBA's judicial evaluation process and weigh the benefits it offers society against the benefits that would accrue in enforcing the instant subpoena.
However, before we address the public policy issue before us, we wish to stress that both the CBA and the Board are keenly concerned with the betterment of the judiciary in Cook County and the enhancement of public confidence in it. This litigation makes clear that both parties are primarily concerned with the public interest. We are left with the difficult task of determining how that public interest is best served.
*801 We reject the argument put forth by the Board that because the Board was established by the Illinois Constitution to investigate the judiciary (see Ill. Const. 1970, art. VI, sec. 15(b)), the public interest is necessarily best served by enforcing the instant subpoena. The proceedings of the constitutional convention indicate the framers of the constitution envisioned an important role for the public and legal profession in the oversight of the judiciary. Circuit, appellate, and supreme court judges are elected by the public. (Ill. Const. 1970, art. VI, sec. 12(a).) We believe it is axiomatic that the public interest is best served when the electorate is well informed as to the qualifications of judicial candidates.
The delegates to the Illinois Constitutional Convention recognized the particular expertise of lawyers in evaluating the performance of judges as well as the qualifications of judicial candidates. 6 Record of Proceedings, Sixth Illinois Constitutional Convention, 1021-22:
"[T]here is obviously no group of persons more able to serve the public interest in assuring the selection of an excellent judiciary than lawyers. They are the one group who by constant contact and opportunity to evaluate performance, and personal and professional attitudes and values, can make discriminating judgments as to the qualifications of judges or candidates for judicial office. * * * [T]o deny lawyers a constitutional role in the nominating process would be a most incongruous principle."
With regard to the election of judges, the roles of the public and the legal profession are interrelated. The CBA recommendations can be an important source of information from which the public can make rational decisions. We implicitly recognized this relationship in Anagnost v. Chicago Bar Association (1980), 83 Ill. App.3d 466, 468, 404 N.E.2d 326:
"Recognizing the responsibility of the legal profession to ensure that qualified judges are elected, defendant has undertaken to make recommendations to the public as to whether a particular candidate is qualified."
Similarly in Matchett v. Chicago Bar Association (1984), 125 Ill. App.3d 1004, 1011, 467 N.E.2d 271, we referred to the publication of the CBA recommendations of judicial candidates as an element of the "crucially important" interest in the open public discussion of the "character and qualifications of candidates for public office." We conclude that any interference with the continued oversight of the judiciary, through the publication of recommendations by organized bar associations, would denigrate the vitality of the public election of judges.
*802 Courts in New York had recognized a public interest privilege in confidential information submitted to judicial nominating committees. These courts concluded that confidentiality is essential to ensure candor in the judicial evaluation process. Baumgarten v. Koch (1978), 97 Misc.2d 449, ___, 411 N.Y.S.2d 487, 489, quoting Lambert v. Barsky (1977), 91 Misc.2d 443, ___, 398 N.Y.S.2d 84, 85:
"`* * * both candidates and those who comment upon their qualifications would be reluctant to be entirely candid if they knew their disclosures were available to the prying eyes of outsiders. Confidentiality and candor are complementary to one another. Destroy one and the other vanishes.'"
The instant subpoena seeks sources for published material relating to issues of public interest. Therefore, we believe the instant case is analogous to an attempt to compel a journalist to reveal his sources. Recently, the court in Andrews v. Eli Lilly & Co. (N.D. Ill. 1983), 97 F.R.D. 494, 500-01, citing a wealth of authority, summarized the law regarding journalists' privilege:
"[T]he lower federal courts have nearly universally concluded that where access is sought to a journalist's confidential sources, the first amendment will not countenance a breach of confidentiality unless the need for the disclosure is carefully weighed against the injury to the free flow of information that would result from the disclosure."
We also find the CBA judicial review process to be similar to peer review. Attorneys, including judges, are asked to relate their opinions of the performance of judges and the qualifications of judicial candidates. It has been recognized that professionals would be reluctant to offer candid and frank evaluations of their colleagues without the assurance of confidentiality. (Jenkins v. Wu (1984), 102 Ill.2d 468; Equal Employment Opportunity Com. v. University of Notre Dame Du Lac (7th Cir.1983), 715 F.2d 331, 336.) The same rationale would obviously be true in attorneys' evaluations of judges or potential judges. An attorney would understandably be reluctant to publicly denounce the qualifications of a judge he must later practice before.
Once a qualified privilege is established, the party seeking disclosure must show a "particular need" for the information. Equal Employment Opportunity Com. v. University of Notre Dame Du Lac (7th Cir.1983), 715 F.2d 331, 338:
"A party must conduct thorough and exhaustive discovery to exploit each and every possible source of information prior to seeking those materials protected by the qualified privilege.`Exploratory' searches will not be condoned. Similarly, the *803 mere fact that certain information may be relevant or useful does not establish a `particularized need' for disclosure of information. [Citations.] The party seeking disclosure of the privileged information must show a `compelling necessity' for the specific information requested."
See also Richards of Rockford v. Pacific Gas & Electric Co. (N.D. Cal. 1976), 71 F.R.D. 388, 390.
In the case at bar, the Board has not shown a particularized need for the privileged material. It has not shown how the particular material is crucial to its investigations nor that it has made any attempt to exploit every other possible source of information. It appears from the record before us that the Board has based its subpoena on nothing more than a newspaper article alleging that the CBA report questioned the integrity of three judges. With nothing more upon which to base its demand for compliance, the Board's subpoena appears to be an "exploratory" search, which is not condoned. Equal Employment Opportunity Com. v. University of Notre Dame Du Lac (7th Cir.1983), 715 F.2d 331, 338.
We find the authority cited by the Board distinguishable. In Wright v. Patrolmen's Benevolent Association (S.D.N.Y. 1976), 72 F.R.D. 161, the plaintiff, a judge, had sought to depose the president of the New York Bar Association regarding the association's investigation about the transfer of the plaintiff to another court. The court rejected the association's claim of confidentiality because "the sources are known and the information that plaintiff wants to verify and expand is also known." (72 F.R.D. 161, 164.) The court also noted the claim of confidentiality was eroded by the fact that the association had furnished the report to the plaintiff. 72 F.R.D. 161, 164.
In Board of Ethics v. Temporary State Com. (1973), 41 App. Div.2d 486, 344 N.Y.S.2d 278, the court, in a three to two decision, compelled the Board to comply with a subpoena issued by the State commission. However, there, the mandate of the state commission was extremely broad, specifically requiring all city departments to supply the commission all "assistance and data as it deems necessary or desirable for the proper execution of its powers and duties." (41 App. Div.2d 486, 487, 344 N.Y.S.2d 278, 279.) The Board was mandated in its charter to issue advisory opinions "with such deletions as may be necessary to prevent disclosure of the identity of the officer or employee involved." (41 App. Div.2d 486, 488-89, 344 N.Y.S.2d 278, 280.) The majority concluded that because the target of the investigation had been disclosed to the public, "there [was] no further need for secrecy." 41 App. Div. 486, 491, 344 N.Y.S.2d 278, 283.
*804  2 The board also cites cases which support the general proposition that privileges should not be expanded because they "are in derogation of the search for truth." (United States v. Nixon (1974), 418 U.S. 683, 710, 41 L.Ed.2d 1039, 1065, 94 S.Ct. 3090, 3108.) However, in Nixon, the privilege sought would have worked to keep information secret; unattainable by the public. On the contrary, in the case at bar, the privilege sought by the CBA works to protect a continued source of public information. In short, we must stress that none of the cases cited by the Board involves the same policy interest involved in the publication of the CBA evaluations, namely, protection of public access to information concerning their elected officials and candidates.
Second, the Board contends that the trial court erred in relying on information outside the record.
In its memorandum opinion, the trial court lamented the loss of public confidence in the judiciary in Illinois. The trial judge cited statistics spanning several years regarding the number of complaints filed against judges by the Illinois Courts Commission and the number of judges the CBA has recommended not be retained. The judge concluded the loss of confidence was not justified based on those statistics. The court also criticized the recent Federal investigation regarding corruption in the circuit court of Cook County, which the judge believed contributed to that loss of public confidence. The Board argues these statements indicate the judge impermissively relied on matters outside the record in making his decision.
We have held that even an erroneous finding on a material fact by the trial court will not warrant reversal if there is sufficient factual basis in the record to sustain the judgment. Evanik v. Janus (1983), 120 Ill. App.3d 475, 486, 458 N.E.2d 962.
 3 In the case at bar, we have concluded that the evidence properly in the record before the trial court was sufficient to sustain the judgment. Therefore, any alleged impropriety in the incorporation of extraneous material in the memorandum opinion of the trial court does not warrant reversal.
 4 Finally, the Board argues the trial court erred in dismissing its petition for enforcement of the subpoena without an evidentiary hearing. The Board urges the cause should be remanded for a hearing to determine "whether the CBA's assertions have any merit."
Where the party moving for dismissal files an affidavit, and the other party does not file a counteraffidavit in response, the facts alleged in the movant's affidavit must be accepted as true. Loughman Cabinet Co. v. C. Iber & Sons, Inc. (1977), 46 Ill. App.3d 873, 876, *805 361 N.E.2d 379.
In the case at bar, the CBA filed an affidavit in support of its motion. The trial court held a hearing on the motion. At no time in the litigation did the Board file a counteraffidavit challenging the sufficiency of the CBA's affidavit, or seek to offer any evidence to refute the averments in the affidavit before the court. Therefore, the Board has accepted the allegations contained in the affidavit. By failing to alert the trial court of a possible question of fact, the Board waived the issue of the existence of a factual dispute. Upper Avenue National Bank v. First Arlington National Bank (1980), 81 Ill. App.3d 208, 211, 400 N.E.2d 1105.
For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.
Judgment affirmed.
BUCKLEY, P.J., and CAMPBELL, J., concur.