701 A.2d 551

Alvin B. LEWIS, Esquire, and Richard
A. Sprague, Esquire, Petitioners

v.

PENNSYLVANIA BAR ASSOCIATION, and
James F. Mundy, Esquire, Respondents.

PENNSYLVANIA BAR ASSOCIATION, and
James F. Mundy, Esquire, Petitioners

v.

Alvin B. LEWIS, Esquire, and Richard
A. Sprague, Esquire, Respondents.

Supreme Court of Pennsylvania.

Argued Sept. 17, 1997.

Decided Oct. 20, 1997.

472

William T. Hangley, Kimberly M. Hult, Philadelphia, and William M. Young, Jr., Harrisburg, for PA Bar Ass'n and James F. Mundy.

Thomas A. Sprague, Philadelphia, for Alvin B. Lewis.

Richard A. Sprague, Pro Se and William H. Lamb, West Chester, for Richard A. Sprague.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

FLAHERTY, Chief Justice.

This is an appeal challenging the orders of the Court of Common Pleas of Lancaster County granting venue in such court and an application to compel inspection of documents against the Pennsylvania Bar Association ("PBA") and its then-President, James F. Mundy, Esquire ("Mundy").

The record reflects the following. Alvin B. Lewis, Esq. and Richard A. Sprague, Esq. are members of the PBA, a Pennsylvania nonprofit corporation. They sought under the provisions of the Nonprofit Corporation Law, 15 Pa.C.S. § 5101 *et seq.*, access to certain documents regarding evaluations of statewide judicial candidates made by the Judicial Evaluation Commission ("JEC"). The JEC is an independent commission, created and funded by the PBA, which independently evaluates candidates for judicial office.

In early February 1997, the JEC announced its evaluations of the judicial candidates for the 1997 primary election. Shortly thereafter, Lewis and Sprague, invoking their status as PBA members, demanded that the PBA produce a range of thirty different categories of documents which they assumed were in the possession of the PBA.[1] They made their demands pursuant to 15 Pa.C.S. §§ 5508(b) and 5793.

The PBA responded, in a letter dated March 3, 1997, that 15 Pa.C.S. § 5508(b) required only the production of: (1) the corporation's membership register; (2) the corporation's books and records of account; and (3) the records of proceedings of the corporation's members and directors. The PBA identified a published list of the PBA membership and offered to make available a computerized listing of its members. It also made a timely delivery of the estimated budget and the account of expenditures relating to the JEC and the minutes of its House of Delegates and Board of Governors.

---

**1.** While Lewis and Sprague represent that they are primarily interested in the reports of the JEC's investigative panels, they request production of documents reflecting all aspects of the JEC. For example, they demand all documents relating to the decision-making processes underlying the evaluation and rating of judicial candidates by the JEC and the comments and votes of each member of the JEC.

Lewis and Sprague then commenced this action against the PBA and Mundy in the Court of Common Pleas of Lancaster County on March 11, 1997 as an application to compel inspection of documents. The PBA and Mundy asserted that: (1) the court lacked subject matter jurisdiction over the application; (2) venue was improper in Lancaster County and only proper in Dauphin County, the county where the PBA's registered office is located; (3) the relevant statutes did not authorize relief against a natural person so that Mr. Mundy should be dismissed; and, (4) the PBA had given to the applicants every document "to which a member of the PBA, acting for a proper purpose, would be entitled." The lower court ruled, without explanation, that the Court of Common Pleas of Lancaster County was a proper venue for the suit but did not address the questions of subject matter jurisdiction or the dismissal of the claim against Mundy.

Thereafter, Lewis and Sprague subpoenaed JEC's records as well as documents in the possession of various JEC members and JEC investigative panel members. The PBA and JEC witnesses moved to quash the subpoenas. The court declined to enforce the subpoenas with the result that neither JEC nor its counsel appeared at the evidentiary hearing on April 10, 1997.

Following said evidentiary hearing, the court granted Lewis and Sprague's application, concluding that they had met the standards of 15 Pa.C.S. § 5508 for the requested inspection. An appeal to Commonwealth Court was taken. Upon agreement of the parties, the lower court later stayed its order pending appeal. This court then exercised expedited plenary jurisdiction under its king's bench powers, 42 Pa.C.S. § 726. We reverse.

■ The first issue is whether venue was properly granted in this case. Lewis and Sprague argue that venue was proper in any judicial district where the PBA regularly does business; however, the PBA argues jurisdiction and venue are proper only where the PBA's registered office is located, i.e., Court of Common Pleas of Dauphin County.

██ We elect not to address this issue for the following reasons, and therefore need not decide whether venue in Lancaster County was proper or improper. The jurisdiction of this court was granted under 42 Pa.C.S. § 726, our extraordinary jurisdiction. The statute reads:

## § 726. Extraordinary jurisdiction

Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

Under this broad jurisdictional mandate, the concept of venue is technically moot. This court is a single unit so the concept of venue is irrelevant, as questions of venue can only arise when there is more than one forum. When this court has plenary jurisdiction, *a fortiori*, venue must lie.

██ The second question is what documents comprise "records of proceedings" to which a member is entitled. The phrase "records of proceedings" is not defined in the statute. The qualified right of a shareholder's access to records is narrower than the director's right because a duly elected director might require access to a wide range of corporate documents in order to perform his fiduciary duties. *Strassburger v. Philadelphia Record Co.*, 335 Pa. 485, 490, 6 A.2d 922, 924 (1939).[2] Similarly, for purposes of section 5508, a member's access is more limited than that of a director who is performing his or her fiduciary duties. The plain meaning of the phrase, therefore, could permit a member's access to duly authorized minutes of official action of the board of directors of a nonprofit corporation but could, for example, exclude

---

**2.** *Strassburger* involved language, similar to that of section 5508, in a former version of the business corporation law. *See also, Donna v. Abbotts Dairies, Inc.*, 399 Pa. 497, 161 A.2d 13 (1960) (shareholder's mandamus action for inspection of minutes of executive committee meetings, correspondence and the like rejected).

access to a variety of documents, such as correspondence and draft documents.

■ The scope of records to which a member has access is further limited by considerations of privacy, privilege and confidentiality. Some accessible documents, or portions thereof, may be protected from disclosure by legitimate considerations of: privacy, such as references to an individual employee's health records; privilege, such as communications protected by the attorney-client privilege or work product doctrine; or confidentiality, where both the corporation's purpose and the public's interest are served by keeping information confidential.

■ The public has an interest in maintaining the quality of the judiciary, which is promoted by the free flow of information about the candidates from those who deal with the candidates regularly, *i.e.*, the attorneys and court personnel. We are also mindful that a court must presume that the legislature "intends to favor the public interest as against any private interest." *Boettger v. Loverro*, 526 Pa. 510, 525, 587 A.2d 712, 720 (1991) (quoting 1 Pa.C.S. § 1922(5)). The public has a compelling interest in having an informed electorate. *Commonwealth v. Wadzinski*, 492 Pa. 35, 46, 422 A.2d 124, 130 (1980); *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 346–47, 115 S.Ct. 1511, 1518–19, 131 L.Ed.2d 426 (1995). Where one publishes political speech under a promise of anonymity, such anonymous publication "may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible." *Id.* at 341–42, 115 S.Ct. at 1516. Thus, the public's compelling interest in having an informed electorate can be ensured, in certain cases, by protecting the anonymity of the source and the content of the source's statements from a nonprofit member's access.

Here, the records to which a member could have access were the minutes of the PBA and the JEC, provided that said minutes were not protected, in whole or in part, by legitimate claims of privacy, privilege or confidentiality. As stated

above, the relevant minutes of the PBA were produced. The minutes of the JEC, if any, were not produced because, as the PBA argued, the possessors of the requested documents were the JEC, its members and the JEC investigative panels, who would likely assert a claim of confidentiality respecting at least some of the documents.[3] The record reflects the JEC has an interest in keeping its records confidential because it had promised confidentiality to those interviewed before they were interviewed. The public has a compelling interest in having an informed electorate which is promoted by the free flow of information about judicial candidates. That flow would slow to a halt were documents respecting interviews or JEC deliberations made available to members. Even the lower court recognized this when it said:

> ... [there is] legitimate concern that the integrity of the JEC's rating process would be destroyed if members of the JEC and its investigating teams knew that their comments and reports would be disclosed to the public.[4]

In conclusion, the "records of proceedings" to which a member of a nonprofit corporation has legitimate access is limited by considerations such as privacy, privilege, or confidentiality where both the corporation's and the public's inter-

---

**3.** The PBA argued, in part, that the possessors of the requested documents, i.e., the JEC, its members and the JEC investigative panels, would likely assert that at least some of the documents were confidential or privileged. Respondents preserved the claim that documents in the possession of JEC, and thus not examined by PBA, may be privileged from disclosure. They also argued that there would be a "potentially catastrophic" impact on candor if confidentiality were not recognized here. Reference was also made to cases where courts recognized a privilege against disclosure of documents analogous to those involved here. *See e.g., City of Tucson v. Superior Court,* 167 Ariz. 513, 809 P.2d 428 (1991) (interviews relating to evaluations of candidates for magistrate held privileged); *Schwartz v. Mayor's Committee on the Judiciary of New York,* 816 F.2d 54 (2d Cir.1987) (confidentiality needed respecting information submitted to Mayor's Committee evaluating family court judges); *In re Petition of Illinois Judicial Inquiry Board,* 128 Ill.App.3d 798, 84 Ill.Dec. 72, 471 N.E.2d 601 (1984) (Chicago Bar Association's records dealing with evaluation of judges considered for retention ruled privileged.)

**4.** This conclusion is based on the testimony of James F. Mundy, Esq., former president of the PBA, which was sufficient to raise the issue in the court of common pleas.

ests are served by keeping the records confidential.[5] Here, considerations of confidentiality outweigh the access of these PBA members to any other records. Accordingly, we reverse the decision of the Court of Common Pleas of Lancaster County.[6]

ZAPPALA, J., files a concurring opinion which is joined by NEWMAN, J.

ZAPPALA, Justice, concurring.

I concur in the result. In my view the issue of privilege should not be addressed by this Court because it was not raised before the common pleas court or preserved for appeal.

I would hold that on this record the documents requested are not "records of the proceedings"[1] such that members of the Pennsylvania Bar Association are entitled to inspect them under 15 Pa.C.S. § 5508(b).

The Appellees assert that they are entitled to inspect all of the documents requested in their demand letter dated February 17, 1997. The Nonprofit Corporation Law of 1988 identifies the types of records that a nonprofit corporation is required to keep.

> Every nonprofit corporation shall keep an original or duplicate record of the proceedings of the members and the directors, and of any other body exercising powers or performing duties which under this article may be exercised or performed by such other body, the original or a copy of

**5.** We make clear the narrowness of the above discussion. This is not a case where a director of a nonprofit corporation is requesting access to records. This is not a case where the moving party is waiving his or her right of privacy or privilege or promise of confidentiality respecting documents concerning said party. And, this is not a case requesting financial documents.

**6.** Lewis and Sprague also argue that they were entitled to the production of documents under 15 Pa.C.S. § 5793, which provides that the member may seek relief in court, and relief under 15 Pa.C.S. § 5508 or 5793 against Mundy. Since the lower court did not address these issues, we likewise do not.

**1.** For purposes of this Opinion, I assume without deciding that the Judicial Evaluation Commission is an "other body" within the definition of 15 Pa.C.S. § 5103.

its bylaws, including all amendments thereto to date, certified by the secretary of the corporation, and an original or a duplicate membership register, giving the names of the members, and showing their respective addresses and the class and other details of the membership of each. Every such corporation shall also keep appropriate, complete and accurate books or records of account. The records provided for in this subsection shall be kept at either the registered office of the corporation in this Commonwealth or at its principal place of business wherever situated.

15 Pa.C.S. § 5508(a).

In summary, a nonprofit corporation is required to keep a record of the proceedings of the members, directors and any other body as defined in the statute, as well as a membership register, and books or records of account. The corporate records required to be kept under § 5508(a) are the identical records that a member has the right to inspect pursuant to 15 Pa.C.S. § 5508(b). The statute does not define "record of the proceedings," but it is apparent from the context of the statute that the phrase refers to a memorialization of official action taken by the members, directors and any other body of the nonprofit corporation. This is much more limited than the interpretation suggested by the Appellees' argument, which would encompass all documents that came into existence during the process of preparing for the evaluation of judicial candidates.

Limiting the scope of records of proceedings subject to inspection is consistent with the historical development of the shareholder's right of inspection. In *Goldman v. Trans–United Industries, Inc.*, 404 Pa. 288, 171 A.2d 788 (1961), we observed that the right of a shareholder to inspect the books and records of account of a corporation had been recognized at common law. The common law rule was later codified as part of the Business Corporation Law of May 5, 1933. Section 308(B) of that early law provided that a shareholder had the right to examine the share register, books or records of account, and *records of the proceedings* of the shareholders and directors.

Absent throughout the development of the shareholder's right of inspection is any precedent that would support the Appellees' expansive interpretation of such right. In the context of both business and nonprofit corporations, the courts have recognized that a shareholder or member is entitled to inspect documents such as membership lists, financial records, audit reports and minutes of meetings. See, e.g., *Goldman*, supra; *Kuhbach v. Irving Cut Glass Co.*, 220 Pa. 427, 69 A. 981 (1908); *Hurst v. Shaw*, 121 Pa.Cmwlth. 1, 549 A.2d 1349 (1988).

The shareholder's right of inspection under common law was not an absolute right. In *Strassburger v. Philadelphia Record Company*, 335 Pa. 485, 6 A.2d 922 (1939), a shareholder, who had been elected as a director, filed a petition for a writ of peremptory mandamus to obtain inspection of corporate books and records and also sought injunctive relief. The shareholder asserted that the corporation had refused to permit him to examine the books of account, minute books and other records and documents of the corporation. The requests for a preliminary writ and an injunction were denied by the lower court.

On appeal, this Court addressed the differences between the relationship of a shareholder to the corporation and that of a director. We noted that a director stands in a fiduciary relationship to the corporation and, therefore, is entitled to all the information available to enable him to perform his duties to the shareholders. We found that the Business Corporation Law of 1933 "did not limit him, in the examination, as it limited the stockholder" whose right extended only to inspection of the share register, books or records of account, and records of the proceedings of the shareholders and directors. Since the phrase "records of proceedings" also appears in 15 Pa.C.S. § 5508(b), this analysis undercuts Appellees' argument that they were entitled to all the documents they had requested.[2]

2. The Appellees attempt to distinguish this case from *Strassburger* because § 5508(b) includes a right to inspect the records of proceedings of an other body of the nonprofit corporation. The Appellees argue that

For these reasons, I would reverse the order of the court of common pleas.

NEWMAN, J., joins in this concurring opinion.

by statute, the members of a nonprofit corporation have been granted broader powers than shareholders of a for-profit corporation. Although § 5508(b) extends to an other body of a nonprofit corporation, it does not expand the categories of documents that may be inspected by a member. Records of proceedings were included in the 1933 version of the Business Corporation Law and the same language appears in the Nonprofit Corporation Law of 1988.