**TRIB TOTAL MEDIA, INC., Appellant**

v.

**HIGHLANDS SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued April 19, 2010.

Decided Aug. 5, 2010.

Reargument Denied Sept. 24, 2010.

David A. Strassburger, Pittsburgh, for appellant.

Ira Weiss, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and
McCULLOUGH, Judge, and
FLAHERTY, Senior Judge.

OPINION BY Judge McCULLOUGH.

Trib Total Media, Inc. (TTM) appeals from the August 6, 2009, order of the Court of Common Pleas of Allegheny County (trial court), which granted Highlands School District's (District) motion for judgment on the pleadings and dismissed TTM's complaint with prejudice. The question before us is one of first impression: whether the Highlands School Board (Board) violated the Sunshine Act, 65 Pa. C.S. §§ 701–716, by inviting local business owners to participate in an executive session for litigation purposes to discuss a property tax assessment appeal? [1]

TTM is a Pennsylvania corporation that owns a number of newspapers, including The Valley News Dispatch (the Newspaper), a daily newspaper of general circulation in the Allegheny River Valley. The District is a school district located in the geographic region covered by the Newspaper.

The Board held a regular public meeting on June 8, 2009. At the conclusion of the meeting, the Board announced it would meet in executive session to discuss litigation. The Board invited the owners and representatives of the Heights Shopping Plaza (Shopping Center) to participate in the executive session to discuss possible litigation related to the Shopping Center's tax assessment appeal. The Board members, the School District's solicitor, and representatives of the Shopping Center attended the closed session. However, the Newspaper's reporter was denied access to the meeting.

On June 10, 2009, TTM filed a complaint against the District, seeking a declaratory judgment that the District violated the Sunshine Act and a permanent injunction to force the District to comply with the Sunshine Act in the future. TTM averred, in pertinent part, as follows:

5. On June 8, 2009, after the conclusion of a public meeting, the Highlands School Board met in private with the owners of the ... Shopping Center to discuss a possible tax assessment appeal by the owners.

6. A reporter for the [Newspaper] was present for the public meeting but was denied access to the private meeting.

7. The meeting with the owners of the ... Shopping Center was closed to the press and the public.

8. Highlands discussed and deliberated on school district business at the meeting.

9. The meeting was not a lawful executive session or any other meeting authorized by law to be private.

10. Highland's conduct in closing the meeting to the press and public was wanton and willful, and reflects a continuing pattern of activity in violation of the Sunshine Act.

(Reproduced Record (R.R.) at 7a.) The District filed an answer to the complaint and provided these responses to TTM's averments:

5. The allegations of Paragraph 5 are admitted only insofar that on June 8, 2009 after the conclusion of the advertised public meeting, the Highlands School Board and Solicitor Ira Weis met in an executive session as permitted by the Sunshine Law, 65 Pa.C.S. § 708[ (a) ](4). Representatives of the

---

1. The Pennsylvania Newspaper Association and the Pennsylvania School Boards Association are participating in this appeal individu-
ally as *amicus curiae* and have submitted briefs in support of their respective positions.

... Shopping Center attended as permitted by 65 Pa.C.S. § 703.

6. Paragraph 6 is admitted only insofar as a reporter for the [Newspaper] was not permitted to attend the executive session.

7. Paragraph 7 is admitted only insofar as the reporter for the [Newspaper] was not permitted to attend the executive session, and it is further averred that no other reporter nor any member of the public requested to attend the executive session.

8. Paragraph 8 is admitted only insofar as it is admitted that the Board of School Directors ... discussed and deliberated School District business at the executive session of June 8, 2009 as part of consulting with the District Solicitor, Ira Weis in connection with litigation pertaining to the ... Shopping Center as authorized by 65 Pa.C.S. § 708[ (a) ](4).

9. Paragraph 9 is specifically denied and it is specifically averred that the executive session on June 8, 2009 was authorized by the Sunshine Law, 65 Pa. C.S. § 703 and § 708[ (a) ](4). . . . It is specifically averred that no vote was taken on June 8, 2009 and further averred that at the public voting meeting of June 15, 2009, the Highlands School Board in public session voted on a motion to consent to ... Shopping Center requesting to reopen the tax as-

sessment appeal, which had been discussed on June 8, 2009.

(R.R. at 11a–12a.)

Following the close of the pleadings, TTM and the District filed cross motions for judgment on the pleadings.[2] TTM asserted in its motion that the District's answer admitted sufficient facts to establish a Sunshine Act violation because the Sunshine Act does not authorize the Board to hold executive sessions in order to meet privately with opposing litigants and because the presence of the opposing litigant was not necessary for the Board to consult with counsel. On the other hand, the District contended that the executive session of June 8, 2009, was authorized by section 708(a)(4) of the Sunshine Act, 65 Pa.C.S. § 708(a)(4).

On August 6, 2009, the esteemed trial court granted the District's motion for judgment on the pleadings and dismissed TTM's complaint. The trial court relied upon section 703 of the Sunshine Act, 65 Pa.C.S. § 703, which permits an agency to admit to an executive session "those persons necessary to carry out the purpose of the meeting." The trial court reasoned that the owners of the Shopping Center were properly admitted to the executive session because they were necessary to carry out the purpose of the meeting.

On appeal to this Court,[3] TTM contends that the trial court erred by granting the

---

**2.** A motion for judgment on the pleadings is in the nature of a demurrer; all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him. *Department of Public Welfare v. Joyce,* 131 Pa.Cmwlth. 621, 571 A.2d 536 (1990). In reviewing a motion for judgment on the pleadings, the trial court may only consider the pleadings themselves and any documents properly attached thereto. *Id.* A motion for judgment on the pleadings should be granted by a trial court only when the pleadings show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Summit Township Industrial and Economic Development Authority v. County of Erie,* 980 A.2d 191 (Pa.Cmwlth.2009).

**3.** Our scope of review of an order granting a motion for judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether questions of material fact remain outstanding. *Pfister v. City of Philadelphia,* 963 A.2d 593 (Pa.Cmwlth.2009). Our standard of review of

District's motion for judgment on the pleadings because the Sunshine Act prohibits a private meeting between the School Board, the District's solicitor, and a select property owner to discuss the owner's tax appeal litigation.

Initially, we note that every state, the federal government, and the District of Columbia have some form of open meeting law. Edwin Kravitz, Jr., *Public Opinion v. Chambersburg Area School District: The Commonwealth Court Holds That Anonymous Voting for School Board Members Contravenes the Sunshine Act*, 5 Widener J. Pub.L. 681 (1996). Pennsylvania first enacted such a law in 1974, when our nation was experiencing wide-spread public dismay over the Watergate disclosures of extensive secret corruption and abuse of power at the highest levels of the federal government.[4] *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675 (1977). The General Assembly took affirmative action to curb corruption and abuse of power by opening the decision-making processes of governmental agencies to greater public participation, scrutiny, and accountability. *Id.; Tom Mistick and Sons, Inc. v. City of Pittsburgh*, 130 Pa.Cmwlth. 234, 567 A.2d 1107 (1989), appeal denied, 527 Pa. 606, 589 A.2d 695 (1990).

an order granting or denying a motion for judgment on the pleadings is plenary. *Harleysville Homestead, Inc. v. Lower Salford Township Authority*, 980 A.2d 749 (Pa. Cmwlth.2009).

4. Act of July 19, 1974, P.L. 486, *formerly* 65 P.S. §§ 261–269.

5. Act of October 15, 1998, P.L. 729.

6. The term "agency" is defined by the Sunshine Act as follows:
The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all the following: ... *township or*

The current version of the Sunshine Act was enacted in 1998.[5] Section 702 of the Sunshine Act, 65 Pa.C.S. § 702, declares that it is the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in the statute.[6] To that end, section 704 of the Sunshine Act, 65 Pa.C.S. § 704, provides that all official agency action and all deliberations by an agency shall take place at a meeting open to the public unless the agency is in closed executive session or another exception to the Act applies.[7] *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113 (Pa. Cmwlth.2002), *appeal denied*, 573 Pa. 669, 820 A.2d 706 (2003).

The term "executive session" is defined by the Sunshine Act as "[a] meeting from which the public is excluded, although *the agency may admit those persons necessary to carry out the purpose of the meeting.*" Section 703 of the Sunshine Act, 65 Pa.C.S. § 703 (emphasis added). Section 708(a) of the Sunshine Act restricts the purposes for which an agency is permitted to conduct an executive session. At issue is the following provision:

(a) **Purpose.**—An agency may hold an executive session for one or more of the following reasons:

*school authority, school board, school governing body ....*
Section 703 of the Sunshine Act, 65 Pa.C.S. § 703 (emphasis added).

7. The Sunshine Act provides only three exceptions to the general rule that official actions and deliberations must take place at an open meeting: (1) executive sessions; (2) conferences that do not involve deliberations of agency business; and (3) working sessions of boards of auditors conducted for the purpose of examining and analyzing accounts and records. Section 707 of the Sunshine Act, 65 Pa.C.S. § 707.

. . . .

(4) *To consult with its attorney or other professional advisor* regarding information or strategy in connection with litigation or with issues on which identifiable complaints are expected to be filed.

Section 708(a)(4) of the Sunshine Act, 65 Pa.C.S. § 708(a)(4) (emphasis added).[8] The General Assembly did not give agencies broad discretion to independently determine when it is appropriate to exclude the public and enter into executive session, but rather set forth in section 708(a) of the Sunshine Act only six narrow reasons for which an agency is permitted to conduct an executive session.

To determine whether the Board violated the Sunshine Act, we must first decide whether the executive session was conducted for the purpose of discussing litigation as permitted by section 708(a)(4) of the Sunshine Act. The District argues that we must rely on the plain language of section 708(a)(4), and we agree.[9]

■ In addition to setting forth a specific, limited purpose for which an executive session may be held, the plain language of section 708(a)(4) identifies specific individuals with whom the agency may consult. The other provisions of section 708(a) contain no similar limitation. Section 708(a)(4) also uses the term "consult with" which has a different connotation from the word "discuss" used in the other subsections. The word "consult" means "to ask advice" or "to seek an opinion," *Webster's Third New International Dictionary* 490 (1986), and the related term "consultation" is defined as the "act of asking the advice or opinion of someone (such as a lawyer)."

8. The five other purposes for which an executive session is authorized are as follows:

(1) To discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee. . . .

(2) To hold information, strategy and negotiation sessions related to the negotiation or arbitration of a collective bargaining agreement or, in the absence of a collective bargaining unit, related to labor relations and arbitration.

(3) To consider the purchase or lease of real property up to the time an option to purchase or lease the real property is obtained or up to the time an agreement to purchase or lease such property is obtained if the agreement is obtained directly without an option.

. . . .

(5) To review and discuss agency business which, if conducted in public, would violate a lawful privilege or lead to the disclosure of information or confidentiality protected by law, including matters related to the initiation and conduct of investigations of possible or certain violations of the law and quasi-judicial deliberations.

(6) For duly constituted committees of a board or council of trustees of a State-owned, State-aided or State-related college or university or community college or of the Board of Governors of the State System of Higher Education to discuss matters of academic admission or standings.

Sections 708(a)(1), (2), (3), (5), and (6) of the Sunshine Act, 65 Pa.C.S. § 708(a)(1), (2), (3), (5), and (6).

9. When construing the Sunshine Act, the Court must give primary effect to the intent of the legislature as it can be determined from the express language of the legislation itself. *Kennedy v. Upper Milford Township Zoning Hearing Board*, 575 Pa. 105, 834 A.2d 1104 (2003). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit, and every statute shall be construed, if possible, to give effect to all of its provisions. *Babac v. Pennsylvania Milk Marketing Board*, 531 Pa. 391, 613 A.2d 551 (1992). Moreover, this Court must presume that the General Assembly intends to favor the public interest as against any private interest. *Lewis v. Pennsylvania Bar Association*, 549 Pa. 471, 701 A.2d 551 (1997).

*Black's Law Dictionary* 358 (9th edition 2009). These distinctions in language compel the conclusion that only attorneys and advisors may participate in executive sessions held pursuant to this section.

In addition, we observed in *Reading Eagle Co. v. Council of the City of Reading,* 156 Pa.Cmwlth. 412, 627 A.2d 305 (1993), that the plain language of section 708(a)(4) reflects a legislative intent to facilitate the *confidential* exchange of views between the agency client and its counsel necessary for effective participation in adversary proceedings. As we explained in *Reading Eagle* : [10]

> [Section 708 of] the Sunshine Act is an acknowledgement that the public would be better served in certain matters if the governing body had a private discussion of the matter prior to a public resolution. *Litigation is one of those issues, because if knowledge of litigation strategy, of the amount of settlement offers or of potential claims became public, it would damage the municipality's ability to settle or defend those matters and all the citizens would bear the cost of that disclosure.*

*Id.* at 306–07 (emphasis added).

 Thus, an agency's statutory authorization to privately consult with counsel or professional advisors regarding litigation strategy or information reflects the policies embodied in the attorney-client privilege, which protects confidential communications between a client and lawyer.

*See Schenck v. Township of Center,* 893 A.2d 849 (Pa.Cmwlth.2006) (construing the Sunshine Act and the repealed Right to Know Act (Act of June 21, 1957, P.L. 390, *formerly,* 65 P.S. §§ 66.1–66.9) in *pari materia* and holding that a municipal solicitor's invoices were attorney work product and shielded from disclosure).[11] Indeed, confidentiality is the foundation of the attorney-client privilege:

> In order for attorney-client communications to be privileged, they must be confidential. There must be an intent that the communication be kept in confidence. If the intent was that the attorney relate the client's communications to others, then the communications are not confidential.
>
> *If a third person who was not an agent of either the attorney or the client was present when the communication was made, then it is clear that the communication was not intended to be confidential and is not privileged.*

Leonard Packel and Ann Bowen Poulin, *Pennsylvania Evidence* § 521–1(d) (footnotes omitted) (emphasis added). To hold otherwise would be not only contrary to this Court's recognition in *Reading Eagle* of the necessity for the confidential exchange of information, but would be a blatant disregard of the preceding evidentiary rule.

 In the instant case, the Board did not conduct the executive session on June 8, 2009, in order to privately consult with

---

**10.** In *Reading Eagle,* the City Council called an executive session to discuss matters of litigation, but failed to disclose the nature of the litigation. Reading Eagle filed suit and the trial court entered declaratory and injunctive relief in favor of Reading Eagle and against the City Council. We affirmed, holding that the Sunshine Act requires an agency to announce the general nature of the litigation when an executive session is called to discuss it.

**11.** *See also Clark–Cowlitz Joint Operating Agency v. Federal Energy Regulatory Commission,* 798 F.2d 499 (D.C.Cir.1986) (observing that an exemption in the federal sunshine law, 5 U.S.C. § 522b, pertaining to an agency's participation in a civil litigation clearly reflects the attorney-client privilege).

its solicitor regarding information or strategy connected to tax litigation. Instead, the Board conducted an executive session with its solicitor *and* representatives of the Shopping Center, a third party, to discuss such litigation.[12] The meeting appears to have provided the Shopping Center a private audience with the Board or an opportunity to lobby the Board to support its position on the tax question. TTM aptly states in its reply brief that meeting with a taxpayer in this circumstance has the "odor of favoritism" that the Sunshine Act does not tolerate. (TTM's reply brief at 3.) While the District averred in paragraph 8 of its answer to the complaint that the executive session was conducted "as *part of* consulting with the District Solicitor," that consultation was subsumed within discussions that took place in the presence of a third party. By including representatives of the Shopping Center in the executive session, the Board destroyed the confidentiality of the communications between the Board and its solicitor. We conclude that by doing so, the Board took the meeting outside the scope of section 708(a)(4) and rendered it a private meeting that violated the Sunshine Act.

▇▇ Moreover, even if we concluded otherwise, we do not agree with the District's assertion that the participation of the Shopping Center's owners and representatives in the executive session was necessary to carry out the permissible purpose of the meeting. Although the definition of "executive session" in section 703 of the Sunshine Act generally provides that the agency may admit into an executive session persons who are necessary to carry

out the meeting's purpose, that definition must be construed in reference to the entire Sunshine Act, *Freundt v. Department of Transportation, Bureau of Driver Licensing,* 584 Pa. 283, 883 A.2d 503 (2005), and not read in isolation. Nothing in section 708(a) or any other section of the Sunshine Act suggests that opposing parties are necessary participants in an executive session called for the permitted purpose of seeking legal advice. The scope of section 708(a)(4) of the Sunshine Act is confined to private consultations between the agency and its counsel or advisors regarding litigation strategy and information—subjects that must be kept confidential to protect an agency's ability to settle or defend those matters—and the presence of opposing parties would undermine the essential purpose of such a meeting. Because exceptions expressed in a statute must be construed to exclude all others, section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, we may not utilize the general definition of executive session in section 703 of the Sunshine Act to expand the range of purposes for an executive session beyond those permitted by section 708(a).

▇▇ Finally, we reject the District's assertion that denying opposing litigants the opportunity to be present at an executive session will have negative consequences, such as undermining an agency's ability to negotiate agreements, preventing an agency from making informed decisions, and frustrating the use of alternative dispute resolution. The District does not suggest that municipal attorneys/solicitors

---

**12.** This is a judgment on the pleadings case. The pleadings establish that the Board met privately in executive session with its solicitor and representatives of the Shopping Center to discuss a tax assessment appeal. There is no averment in the pleadings describing the executive session as a settlement conference; nor do the pleadings indicate that the Shopping Center's counsel was present at the meeting. Moreover, the parties did not aver that representatives of other interested taxing jurisdictions and parties, such as the municipality and the county, participated in the private meeting or had notice of the meeting.

practice law differently from other attorneys, i.e., consult with clients, meet with representatives of adverse parties, and bring back the results of such meetings to their clients. While none of the parties have attempted to characterize the June 8, 2009, executive session as a settlement conference, we observe that the record would not support such a characterization.[13] Furthermore, nothing in the Sunshine Act precludes municipal solicitors from engaging in the established and acceptable practice of conducting settlement conferences by entering into discussions with representatives of parties, negotiating proposals for settlement, and then presenting any proposed settlement to his or her agency/board for deliberation and approval. Such settlement conferences do not require, nor does the Sunshine Act provide for, a quorum of the agency/board to be present.

The General Assembly stated in section 702 of the Sunshine Act that it is the public policy of the Commonwealth that citizens have a *right* to notice and a *right* to attend agency meetings. This clear and specific right is not diminished by general policies and trends favoring negotiation, settlement, and alternative dispute resolution. Even if we agreed with the District's arguments, expanding the permissible reasons for holding an executive session is a matter for the Legislature, not this Court. This Court's role does not include expanding statutes beyond their terms. *Weaver v. Harpster,* 601 Pa. 488, 975 A.2d 555 (2009); *Curtis Bay Towing Co. v. Department of Labor & Industry,* 87 Pa.Cmwlth. 192, 486 A.2d 1057 (1985).

In light of the foregoing, we conclude that the executive session conducted by the District's School Board on June 8, 2009, was in violation of the Sunshine Act. Accordingly, we are compelled to reverse the trial court's order, reinstate TTM's complaint, and remand this matter to the trial court for entry of judgment on the pleadings in favor of TTM and to consider TTM's request for attorneys' fees and costs.

## ORDER

AND NOW, this 5th day of August, 2010, the August 6, 2009, order of the Court of Common Pleas of Allegheny County is hereby REVERSED. Trib Total Media, Inc.'s complaint is reinstated, and this matter is remanded to the trial court for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

13. Rather than a settlement conference, the pleadings show that a quorum of the Board provided the Shopping Center with a private audience, free from public scrutiny, to discuss its tax litigation. This type of meeting is impermissible under the Sunshine Act.